COLUCCI & UMANS
FRANK J. COLUCCI (*Application For Admission Pro Hac Vice Pending*)
fcolucci@colucci-umans.com
DAVID M. DAHAN (*Admitted Pro Hac Vice*)
ddahan@colucci-umans.com
218 East 50th Street
New York, New York 10022
Telephone:   212.935.5700
Facsimile:   212.935.5728

TUCKER ELLIS & WEST LLP
JEAN A. HOBART – STATE BAR NO. 146993
BART L. KESSEL – STATE BAR NO. 125080
ANNE SWOBODA CRUZ – STATE BAR NO. 229819
515 SOUTH FLOWER STREET, FORTY-SECOND FLOOR
LOS ANGELES, CALIFORNIA 90071-2223
Telephone:   213.430.3400
Facsimile:   213.430.3409

Attorneys for Plaintiff,
TROVATA, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| TROVATA, INC., | Civil Action No. SACV07-1196 JVS (MLGx) |
| Plaintiff, | |
| v. | |
| FOREVER 21, INC.; FOREVER 21 LOGISTICS, LLC; FOREVER 21 RETAIL, INC.; and DOES 1 through 50, inclusive, | **PLAINTIFF TROVATA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| Defendants. | [Declarations of John Whitledge, Katherine M. Lyon, Statement of Uncontroverted Facts and Conclusions of Law, and [Proposed] Order filed concurrently herewith] |
| | Date: June 9, 2008 Time: 1:30 p.m. Ctrm: 10C |
| | Before the Honorable James V. Selna |

1  TO DEFENDANTS FOREVER 21, INC., FOREVER 21 LOGISTICS, LLC,

2  FOREVER 21 RETAIL, INC., AND DOES 1 THROUGH 50, INCLUSIVE, AND

3  THEIR ATTORNEYS OF RECORD:

4  PLEASE TAKE NOTICE THAT on June 9, 2008, at 1:30 p.m., or as soon

5  thereafter as the matter may be heard, before the Honorable Judge James V. Selna

6  in Courtroom 10C of the Court for the Central District of California, located at 411

7  West Fourth Street, Santa Ana, California 92701-4516, Plaintiff, Trovata, Inc., will

8  and hereby does move this Court, pursuant to Fed. R. Civ. P. 56, for summary

9  judgment that there is no genuine issue as to any material fact and that Plaintiff is

10  entitled to judgment as a matter of law as to all of its claims.

11  This motion is based upon this Notice, the following Memorandum of Points

12  and Authorities, the Declarations of John Whitledge and Katherine Lyon, the

13  pleadings on file in this action, such other evidence and arguments as may be

14  presented to the Court, and any relevant matters of which the Court may take

15  judicial notice.

16  This motion is made following the conference of counsel pursuant to Local

17  Rule 7-3, which took place on March 13, 2008.

18

19  Dated:      May 12, 2008          **COLUCCI & UMANS**

20                                    By:_____/s/_____

21                                    Frank J. Colucci
                                      (Admission Pro Hac Vice Pending)
22                                    David M. Dahan
                                      (Admitted Pro Hac Vice)
23                                    COLUCCI & UMANS
24                                    218 East 50th Street
25                                    New York, New York 10022
                                      Telephone: 212.935.5700
26                                    Facsimile: 212.935.5728
27                                    Emails:fcolucci@colucci-umans.com
                                              ddahan@colucci-umans.com
28

NOTICE OF MOTION AND MOTION FOR
SUMMARY JUDGMENT
SACV07-1196 JVS (MLGx)

1

Attorneys for Plaintiff Trovata, Inc.

2

Co-Counsel for Plaintiff Trovata, Inc.:

3

4   TUCKER ELLIS & WEST LLP
    JEAN A. HOBART – STATE BAR NO. 146993
5   BART L. KESSEL – STATE BAR NO. 125080
    ANNE SWOBODA CRUZ – STATE BAR NO. 229819
6   515 SOUTH FLOWER STREET, FORTY-SECOND FLOOR
    LOS ANGELES, CALIFORNIA 90071-2223
7   Telephone:   213.430.3400
    Facsimile:   213.430.3409

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

**TABLE OF CONTENTS**.................................................................i
**TABLE OF AUTHORITIES** ...........................................................ii
**MEMORANDUM OF POINTS AND AUTHORITIES**............................... 1
I.     INTRODUCTION .......................................................... 1
II.    STATEMENT OF UNCONTROVERTED FACTS ...................... 1
       A.   The Parties ........................................................... 1
       B.   Procedural History ................................................. 2
       C.   Trovata Enjoys a Reputation for Design
            Innovation and Quality ........................................... 3
       D.   Defendant Willfully and Deliberately Copied
            Several of Trovata's Most Well-Known Styles............... 5
III.   SUMMARY JUDGMENT SHOULD BE
       ENTERED AS A MATTER OF LAW.................................... 9
       A.   Standard for Summary Judgment................................. 9
       B.   Forever 21 Has Infringed the Trovata Trade Dresses........ 9
            1.   The Trovata Trade Dresses Are Protectable ............ 10
            2.   There Is a Likelihood of Confusion Between the
                 Infringing Products and the Trovata Trade Dresses ...... 12
                 a.   The "*Sleekcraft* Factors" ........................... 12
                 b.   The Infringing Products Are Completely
                      Identical to the Trovata Trade Dresses ............. 14
                 c.   Trovata and Forever 21 Both Sell Apparel......... 14
                 d.   Forever 21 Intentionally Copied the
                      Trovata Trade Dresses ................................ 15
                 e.   Other "*Sleekcraft* Factors" ....................... 16
                 f.   Summary of the "*Sleekcraft* Factors" ............ 18
       C.   Forever 21's Actions Constitute False
            Designation of Origin (Count 2)................................ 18
       D.   Forever 21's Actions Constitute False
            Advertising (Count 3) ........................................... 19
       E.   Summary Judgment in Favor of Trovata Is Appropriate
            On Its Claims Under Sections 17200, 17500 and 14330
            (Counts 5, 6, and 7)............................................. 19
IV.    CONCLUSION ............................................................ 23

1

# TABLE OF AUTHORITIES

2

Page

3

## CASES

4

*Abercrombie & Fitch Co. v. Moose Creek, Inc.,*
486 F.3d 629 (9th Cir. 2007)...................................................................13

5

6

*Acad. of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.,*
944 F.2d 1446 (9th Cir. 1991)..........................................................13, 21

7

8

*Am. Honda Motor Co., Inc. v. Pro-Line Protoform,*
325 F. Supp. 2d 1081 (C.D. Cal. 2004) ............................................18, 19

9

10

*AMF Inc. v. Sleekcraft Boats,*
599 F.2d 341 (9th Cir. 1979)...............................................13, 14, 15, 17

11

12

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)..................................................................................9

13

14

*Asics Corp. v. Skechers U.S.A.,*
No. SACV 07-0103 AG (PJWx),
2007 U.S. Dist. LEXIS 38048 (C.D. Cal. Apr. 25, 2007) .......................12

15

16

*Audio Fidelity, Inc. v. High Fidelity Recordings, Inc.,*
283 F.2d 551 (9th Cir. 1960)............................................................20, 21

17

18

*Barquis v. Merchants Collection Ass'n,*
7 Cal. 3d 94 (1972)..................................................................................20

19

20

*Black & Decker Corp. v. Int'l Sales & Mktg.,*
36 U.S.P.Q.2d 1851 (C.D. Cal. 1995).....................................................12

21

22

*Borinquen Biscuit Corp. v. M.V. Trading Corp.,*
443 F.3d 112 (1st Cir. 2006) ...................................................................17

23

24

*Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.,*
174 F.3d 1036 (9th Cir. 1999)...........................................................13, 18

25

26

*Cairns v. Franklin Mint Co.,*
24 F. Supp. 2d 1013 (C.D. Cal. 1998) ....................................................22

27

28

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ................................................................................. 9

*Century 21 Real Estate Corp. v. Sandlin,*
846 F.2d 1175 (9th Cir. 1988) ................................................................ 23

*Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.,*
870 F.2d 512 (9th Cir. 1989) .................................................................. 11

*Clicks Billiards Inc. v. Sixshooters Inc.,*
251 F.3d 1252 (9th Cir. 2001) ................................................................ 10

*Coach Leatherware Co., Inc. v. AnnTaylor, Inc.,*
933 F.2d 162 (2d Cir. 1991) ................................................................... 17

*Cook, Perkiss & Liehe, Inc. v. No. Cal. Collection Service Inc.,*
911 F.2d 242 (9th Cir. 1990) .................................................................. 19

*Cosmos Jewelry Ltd. v. Po Sun Hon Co.,*
470 F. Supp. 2d 1072 (C.D. Cal. 2006) ............................................ 11, 21

*Digital Theater Sys. Inc. v. Mintek Digital Inc.,*
71 U.S.P.Q.2d 1448 (C.D. Cal. 2004) ..................................................... 21

*Eliya Inc. v. Kohl's Dep't Stores,*
82 U.S.P.Q.2d 1088 (S.D.N.Y. 2006) ..................................................... 11

*Ernst Paul Lehmann Patentwerk v. San-Val Discount, Inc.,*
No. CV 95-0771 DT (CTx),
1996 U.S. Dist. LEXIS 9899 (C.D. Cal. May 22, 1996) ......................... 20

*Faberge, Inc. v. Saxony Prods., Inc.,*
605 F.2d 426 (9th Cir. 1979) .................................................................. 22

*Fleischmann Distilling Corp. v. Maier Brewing Co.,*
314 F.2d 149 (9th Cir. 1963) .................................................................. 16

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,*
826 F.2d 837 (9th Cir. 1987) ............................................................ 12, 15

*GoTo.com, Inc. v. Walt Disney Co.*,
202 F.3d 1199 (9th Cir. 2000)..........................................................................13, 14

*Grove Press, Inc. v. Collectors Publ'n, Inc.*,
264 F. Supp. 603 (C.D. Cal. 1967) ............................................................22

*Haeger Potteries, Inc. v. Gilner Potteries*,
123 F. Supp. 261 (S.D. Cal. 1954)............................................................22

*Karl Storz Endoscopy-America, Inc. v. Surgical Techs., Inc.*,
285 F.3d 848 (9th Cir. 2002)...................................................................15

*Keenan v. Allan*,
91 F.3d 1275 (9th Cir. 1996)....................................................................9

*Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Eastimpex*,
No. C 04-4146 MMC, 2007 U.S. Dist. LEXIS 7880 (N.D. Cal. Feb. 2, 2007) ......21

*K-Swiss Inc. v. USA Aisiqi Shoes Inc.*,
291 F. Supp. 2d 1116 (C.D. Cal. 2003) ...............................................14, 15

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
988 F.2d 1117 (Fed. Cir. 1993)...............................................................11

*Lisa Frank, Inc. v. Impact Int'l, Inc.*,
799 F. Supp. 980 (D. Ariz. 1992)........................................................12, 16

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,
799 F.2d 867 (2d Cir. 1986)...................................................................17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986).................................................................................9

*Nova Wines, Inc. v. Adler Fels Winery LLC*,
467 F. Supp. 2d 965, 983 (N.D. Cal. 2006) ...........................................18

*Payless Shoesource, Inc. v. Reebok Int'l Ltd.*,
998 F.2d 985 (Fed. Cir. 1993)...............................................................15

*Pepsico, Inc. v. Cal. Security Cans*,
238 F. Supp. 2d 1172 (C.D. Cal. 2002) ................................................19

*Phat Fashions, L.L.C. v. Phat Game Athletic Apparel, Inc.*,
No. Civ. S-01-1771 LKK/PAN,
2002 U.S. Dist. LEXIS 15734, at *34 (E.D. Cal. March 19, 2002) ........................18

*Qualitex Co. v. Jacobson Prods. Co., Inc.*,
514 U.S. 159 (1995)........................................................................................10, 11

*Rain Bird Corp. v. Hit Prods. Corp.*,
72 U.S.P.Q.2d 1105 (C.D. Cal. 2004).................................................................12, 13

*Red Bull GmbH v. Matador Concepts, Inc.*,
No. CV04-9006-JFW (PLAx),
2006 U.S. Dist. LEXIS 96764, at *21 (C.D. Cal. 2006)....................................13, 14

*Saunders v. Superior Court*,
27 Cal. App. 4th 832 (1994) .........................................................................20

*Searle v. Wyndham Int'l, Inc.*,
102 Cal. App. 4th 1327 (2002) .....................................................................20

*Smith & Hawken, Ltd. v. Gardendance, Inc.*,
No. C 04-1664 SBA,
2004 U.S. Dist. LEXIS 22934 (N.D. Cal. Nov. 5, 2004) ........................................20

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997)..............................................................................19

*St. Ives Labs., Inc. v. Nature's Own Labs.*,
529 F. Supp. 347 (C.D. Cal. 1981) .........................................................................21

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
768 F.2d 1001 (9th Cir. 1985)................................................................................12

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
505 U.S. 763 (1992)...............................................................................................10

*United States v. Diebold, Inc.*,
396 U.S. 654 (1962)...............................................................................................9

*Vision Sports, Inc. v. Melville Corp.*,
888 F.2d 609 (9th Cir. 1989).................................................................................12

*Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*,
529 U.S. 205 (2000) ................................................................................10

*Wein-Und Sektkellerei Jakob Gerhardt Niersteiner Schlosskellereien
GmbH & Co. v. Hopkins*, No. 07cv00673 BTM (WMc),
2007 U.S. Dist. LEXIS 75697 (S.D. Cal. Oct. 11, 2007) ...................19, 20

*Yamaha Corp. of Am. v. Ryan*,
13 U.S.P.Q.2d 1157 (C.D. Cal. 1989)......................................................11

## STATUTES

15 U.S.C. § 1115(a) (2006) ......................................................................11

15 U.S.C. § 1125 (2006) ..........................................................................10

Cal. Bus. & Prof. Code § 14247 (Deering 2007).....................................23

Cal. Bus. & Prof. Code § 14330 (Deering 2006)...............................22, 23

Cal. Bus. & Prof. Code § 17200 (Deering 2008).....................................20

Cal. Bus. & Prof. Code § 17500 (Deering 2008).....................................22

## SESSION LAWS

2007 Cal. Adv. Legis. Serv. 711 (Deering) ..............................................23

## RULES

*Fed. R. Civ. P. 1* ......................................................................................9

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2  I.    **INTRODUCTION**

3       Plaintiff, TROVATA, INC. ("Plaintiff" or "Trovata") respectfully moves the

4  Court for summary judgment pursuant to Federal Rule 56(c) on all of the claims set

5  forth in its complaint and respectfully requests that the Court enter judgment in its

6  favor on each of its seven claims against Defendants, FOREVER 21, INC.,

7  FOREVER 21 LOGISTICS, LLC, FOREVER 21 RETAIL, INC., and DOES 1

8  THROUGH 50, Inclusive (hereinafter, collectively "Defendants" or "Forever 21").[i]

9       Trovata filed this civil action in order to prevent Forever 21 from unjustly

10 enriching itself at the expense of Trovata's hard-earned reputation, its unique and

11 distinctive trade dresses, its trademark, its original designs and its customers.  The

12 undisputed record demonstrates that Forever 21 has blatantly, intentionally and

13 meticulously copied at least seven of Trovata's original designs and passed them

14 off to the public as their own without any regard to Trovata's rights.  The copying

15 by Forever 21 is so comprehensive and audacious that it has even duplicated

16 Trovata's "T" label, which is the symbol of its company and a registered trademark,

17 and copied, word-for-word, Trovata's distinctive care label.  As demonstrated

18 herein, no reasonable jury could come to any conclusion but that Forever 21 is

19 liable to Trovata for its willful and wanton acts in violation of Trovata's rights.  As

20 a result, summary judgment is appropriate as a matter of law.

21 **II.   STATEMENT OF UNCONTROVERTED FACTS**

22 *A.    The Parties*

23       Trovata is an inventive clothing design and manufacturing company based in

24 Newport Beach, California.  Despite its relatively recent entry into the industry,

25 Trovata has garnered outstanding recognition for its original apparel lines for men

26 and women, as well as differentiated itself from other designers for its creative

27

28  [i]     Does 1 through 50 still being unknown to Plaintiff.

marketing approach and the unique, whimsical style of its designs.  Trovata products are available only in high-end specialty stores such as Barney's New York, Louis Boston, Colette, Harvey Nichols, Ron Herman and American Rag. (Whitledge Decl., ¶¶ 2, 9, 10.)

Forever 21 is a privately held corporation based in Los Angeles, California. Forever 21 operates a nationwide chain of approximately 350 retail stores, as of 2007, under the Forever 21, Forever XXI, For Love 21 and Gadzooks names, as well as a retail website (www.forever21.com).  (Lyon Decl., ¶¶ 2, 3, Ex. 1.) Forever 21 explicitly markets itself to "trend savvy shoppers" where "the most current fashions at the greatest value" can be purchased.  (Lyon Decl., ¶ 3.) Accordingly, Forever 21 sells inexpensive, men's and women's apparel and accessories that are manufactured to reflect ever-changing fashion trends. According to *Forbes*' 2007 ranking of the largest private companies in the United States, Forever 21 placed number 410, attaining sales in excess of $1 billion in 2006 with 12,500 employees. (Lyon Decl., ¶ 2.)

## B.    *Procedural History*

Trovata filed its complaint against Defendants on October 9, 2007, alleging federal trade dress infringement, false designation of origin, and false advertising in violation of the Lanham Act, common law unfair competition, and unfair competition, false advertising and dilution in violation of California statutory law. Forever 21 filed its answer on November 26, 2007, denying Trovata's allegations in full and setting forth various affirmative defenses.  Since then, the parties have exchanged limited discovery in the form of initial disclosures and documents. Because Trovata believes that there are no material issues of fact in dispute, Trovata hereby respectfully brings this motion for summary judgment on all of the claims set forth in its complaint.

*C.* ***Trovata Enjoys a Reputation for Design Innovation and Quality***

Trovata was founded in 2001 by four friends who shared a passion for design and clothing. (Whitledge Decl., ¶ 2.) Through hard work as well as high quality and fashion forward apparel, Trovata soon created a great deal of buzz in the fashion industry.[ii] (Whitledge Decl., ¶ 9, Ex. 3.) Since that time, Trovata's popularity amongst consumers has risen exponentially. In addition to its mounting popularity amongst consumers, Trovata is recognized as an innovative and creative design house within the fashion industry. Among its numerous accolades, in 2005 Trovata was awarded both the Ecco Domani Fashion Foundation award and the CFDA/Vogue Fashion Fund award. (Whitledge Decl., ¶ 13, Ex. 6.)

Trovata's line of trendy, fashion forward garments included several that are at issue in this civil action. These garments have been crafted consistent with the signature look for which Trovata has become renowned, including its use of uneven-shaped as well as mismatched buttons and stripes. Trovata's so-called "buttons and stripes" look has achieved a high degree of notoriety in the fashion world. (Whitledge Decl., ¶ 16, Ex. 8). These include the following styles: "Fife S/S Voile Blouse"; the "Luge Hoodie"; "Berber Polo"; "Merchant S/S Henley"; "Highlands Shirt"; and the "Outpost Cardigan" (which comes in two color/stripe schemes) (collectively the "Trovata Garments"). (Whitledge Decl., ¶¶ 29, 31, 33, 35, 37, 39; Exs. 16, 18, 19, 20, 21, 22, 23, respectively.)

It is Trovata's attention to quirky detail in the design of these garments that has garnered it widespread recognition. For example, the Fife S/S Voile Blouse features the following points of unique design: 1) a tight grouping of four dots spaced evenly in a "box" pattern with boxes repeated across the garment forming intersecting, diagonal lines; 2) the silhouette has ruffles on the short-sleeve opening,

---

[ii] A recent *New York Times* article commented: "Just a couple of years ago in the early Oughties, the fashion world developed a big blue crush on four super-cute beach boys in their mid-20s (Jeff Halmos, Sam Shipley, Josia Lamberto-Egan and John Whitledge) and their surf-inspired clothing line, Trovata." (Whitledge Decl., Ex. 7.)

neck and along a unique and asymmetrical front opening; 3) button closure capped sleeves; 4) mismatched buttons for the sleeve closures; use of two-hole buttons with contrast outline; and 5) 2-hole buttons spaced evenly down the asymmetrical front opening; contrast burgundy thread used for button sewing and buttons sewn on with contrast thread running vertically instead of horizontally.  (Whitledge Decl., ¶ 28.)

Another of Trovata's signature design elements by which consumers identify Trovata is the unique and distinctive label it affixes to the fabric of Trovata's apparel. (Whitledge Decl., ¶¶ 20, 21, 22, 23.)  The "T" design label is the subject of United States Trademark Registration No. 3,414,165 in the United States Patent and Trademark Office ("USPTO") in International Classes 18 and 25 ("the T Label Mark").  (Whitledge Decl., ¶ 6, Ex. 2)[iii]  The T Label Mark features a unique floral crest design surrounding the letter "T":



The T Label Mark is affixed to every Trovata garment along with quirky care instructions imprinted alongside:



---

[iii] In Class 25, the Trovata Label Mark covers the following goods: "clothing, namely, blazers, blouses, cover-ups, coats, dresses, fleece tops, gloves, hooded sweatshirts, jackets, knit tops, pants, scarves, shirts, skirts, shorts, sweaters, t-shirts and vests."

- 4 -

The care instructions read:

> If you want this thing to last, I would suggest to machine wash
> with similar colors cold, do not use chlorine bleach, tumble dry low.
> Iron if needed.  I know you already know all this.  –Sam

(Whitledge Decl., ¶ 22, Ex. 12.)  "Sam" refers to one of Trovata's founders, Sam Shipley (the T Label Mark together with the care instructions referred to hereinafter as the "Trovata Label").  The Trovata Label is an original creation of Trovata and was exclusively designed by Trovata.  All of the Trovata Garments that incorporate these signature elements either alone or in combination identify Trovata as their source to the consumer (hereinafter collectively the "Trovata Trade Dresses").

## D.   *Defendant Willfully and Deliberately Copied Several of Trovata's Most Well-Known Styles*

In February 2007, Trovata first discovered that Forever 21 was selling garments in its stores that slavishly copied Trovata's own garments that featured the Trovata Trade Dresses -- designs that Trovata had worked diligently to craft and market to the public.  (Whitledge Decl., ¶¶ 24, 28, 41.)  As Trovata began to investigate further, it became evident that there were numerous garments being sold by Forever 21 that were almost identical in appearance to several of Trovata's styles ("the Infringing Garments").  (Whitledge Decl., ¶¶ 30, 32, 34, 36, 38, 39, Exs. 17, 18, 19, 20, 21, 22, 23, respectively.)  Set forth below are examples of some of the styles of Trovata along with the corresponding Infringing Garments.



As the foregoing demonstrates, Forever 21 has indisputably completely replicated the overall appearance and look of not one, but seven of Trovata's styles as the garments' silhouette; scale, the pattern-stripe scale and the pattern-stripe colors are exactly replicated.[iv] (Whitledge Decl., ¶¶ 30, 32, 34, 36, 38, 39, Exs. 17, 18, 19, 20, 21, 22, 23, respectively.) Moreover, Forever 21's copying was so scrupulous that it extended not just to the overall appearance of the garments, but also to their minutest details – quirky non-functional details intentionally created by Trovata to enhance its identity as the source or origin of the goods. For example, Forever 21 utilized the same exact fabric in several instances and, in others, replicated the stitching pattern and button sequence. (Whitledge Decl., ¶¶ 30, 32, 34, 36, 38, 39, Exs. 17, 18, 19, 20, 21, 22, 23, respectively.)

---

[iv] Trovata will file the actual samples depicted herein with the Court prior to the hearing date noticed herein.

Further demonstrating Forever 21's blatant intent to faithfully copy the Trovata Trade Dresses, Forever 21 copied the T Label Mark and the Trovata Label, on the Luge Hoodie and both of the Outpost Cardigan styles, substituting "Forever" in the exact same place where "Trovata" appears on the Trovata Label and in a similar stylized, outlined font.  (Whitledge Decl., Exs. 18, 22, 23.)  Further, Forever 21 has virtually duplicated the floral "T" crest of the T Label Mark, using an "F" in place of a "T" against a striped background (the "Infringing Label"):



Notably, it appears as if Forever 21 digitally erased the word TROVATA at the bottom of the design and replaced it with the word "FOREVER" since, if inspected closely, the tails of the birds at the end of the word are missing, presumably because they were erased when Forever 21 substituted the word "FOREVER."  (Whitledge Decl., ¶25, Ex. 13.)

Completing Forever 21's rote duplication of the Trovata Label, Forever 21 did not stop with copying Trovata trademark, but it repeated, word for word, and line for line, the care instructions of the Trovata Label:



(Whitledge Decl., ¶26, Ex. 14.)

Given the complete identity of the Infringing Garments to the Trovata Garments, it is indisputable that Forever 21 simply copied the Trovata Garments verbatim and passed them off as creations of its own. Forever 21's deliberate misappropriation of Trovata's intellectual property appears to be part of its regular and systemic course of doing business, since this case is merely one of numerous instances in which Forever 21 has copied the designs of another company intending to "reap where it has not sown." (Whitledge Decl., ¶ 27, Ex. 15.) (Lyon Decl., ¶ 4.) According to a search of publicly available court records, Forever 21 is currently a defendant in as many as 10 cases where it is accused of infringing the intellectual property of numerous different parties. Dozens of other intellectual property cases have been filed against Forever 21 since April 2001, which have since been closed.[v] (Lyon Decl., ¶ 4.)

\*   \*   \*

Accordingly, there is no genuine issue of material fact as to Forever 21's liability to Trovata for the claims set forth in the complaint and thus summary judgment is appropriate as to liability as a matter of law.

---

[v] Further, what appears to be Forever 21's nefarious business practice has not gone unnoticed by the trade and the media as well. (Whitledge Decl., ¶ 27, Ex. 15.)

### III.   SUMMARY JUDGMENT SHOULD BE
###        ENTERED AS A MATTER OF LAW

#### A.   *Standard for Summary Judgment*

The Supreme Court has held that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (*quoting Fed. R. Civ. P.* 1). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322. The mere presence of some issues of disputed fact will not preclude summary judgment if none of those issues is material to the claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party's burden is satisfied by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the Court must view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (*quoting United States v. Diebold, Inc.*, 396 U.S. 654, 655 (1962)), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) ("We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

#### B.   *Forever 21 Has Infringed the Trovata Trade Dresses*

There is no issue of material fact that Forever 21 has committed Trade Dress

infringement in violation of Section 43(a) of the Lanham Act by meticulously copying the Trovata Trade Dresses.[vi]

### 1.    *The Trovata Trade Dresses Are Protectable*

Trade dress is defined as a product's "total image and overall appearance." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764 n.1 (1992).  Protectable trade dress may include "size, shape, color or color combinations, texture, graphics, or even particular sales techniques."  *Id.*  To prevail on its motion for summary judgment, Trovata must show that 1) the trade dresses it claims are nonfunctional; 2) the trade dresses serve a source-identifying role; and 3) Forever 21's product creates a likelihood of consumer confusion.  *See Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001).

A trade dress is considered functional only if it is "essential to the use or purpose of the article or . . . affects the cost or quality of the article" or if exclusive use would "put competitors at a significant non-reputation-related disadvantage." *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 165 (1995).[vii]  Since none of the design elements utilized by Trovata in creating the Trovata Trade Dresses are essential to the function of the shirts, sweaters and hoodies with which they are used, and they create an arbitrary overall visual impression, they are nonfunctional as a matter of law.

However, since product design trade dress is never inherently distinctive, Trovata must show secondary meaning in its Trovata Trade Dresses.  *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 216 (2000).  Secondary meaning adheres in a trade dress where, "in the minds of the public, the primary

---

[vi] Section 43(a) of the Lanham Act creates a cause of action against "[a]ny person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof" that is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person." 15 U.S.C. § 1125(a) (2006).

[vii] In evaluating the functionality of a claimed trade dress, "it is crucial that [courts] focus *not* on the individual elements, but rather on the overall visual impression that the combination and arrangement of those elements create." *Clicks Billiards*, 251 F.3d at 1259.

significance of a product feature . . . is to identify the source of the product rather than the product itself." *Cosmos Jewelry Ltd. v. Po Sun Hon Co.*, 470 F. Supp. 2d 1072, 1086 (C.D. Cal. 2006) (*quoting Qualitex*, 514 U.S. at 163).[viii]

Trovata's designs are recognized throughout the industry. Moreover, Trovata and the Trovata Trade Dresses have received an overwhelmingly positive response from the public and have sold briskly through Trovata's retail partners such as Barney's and Harvey Nichols. (Whitledge Decl., ¶¶ 9, 10, 11, 12, 13, 14, 15, 16, 18, 20, Exs. 3, 4, 6, 7, 8, 9, 11.) As a result of Trovata's efforts and its acclaim, the Trovata Trade Dresses have achieved secondary meaning in the market as a source identifier. *See Cosmos Jewelry Ltd.*, 470 F. Supp. 2d at 1086; *Eliya Inc. v. Kohl's Dep't Stores*, 82 U.S.P.Q.2d 1088, 1094 (S.D.N.Y. 2006) (*citing L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1130 (Fed. Cir. 1993)) ("If a product with a particular trade dress becomes popular in a short period of time, the trade dress may become distinctive through secondary meaning in a matter of months."). Accordingly, the Trovata Trade Dresses are strong indicators of source among fashion-conscious consumers.

Moreover, the T Label Mark is registered in the USPTO, therefore it is *prima facie* valid as a source-identifying trademark for the goods set forth in the registration, namely, clothing. 15 U.S.C. § 1115(a) (2006). Given that the floral crest design of the T Label Mark is an original Trovata design and completely arbitrary, it requires no further proof of secondary meaning. *See, e.g., Yamaha Corp. of Am. v. Ryan*, 13 U.S.P.Q.2d 1157, 1160 (C.D. Cal. 1989).

Further, compelling evidence of secondary meaning is Forever 21's exact copying of the Trovata Trade Dresses:

---

[viii] In determining whether product design trade dress possesses secondary meaning, courts consider various factors, including (1) whether actual purchasers associate the trade dress with the source; (2) the degree and manner of advertising by the party seeking protection; (3) the length and manner of use of the trade dress by the party seeking protection; and (4) whether use of the trade dress has been exclusive to that party. *Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.*, 870 F.2d 512, 517 (9th Cir. 1989).

> Proof of exact copying, without any opposing proof, can be
> sufficient to establish a secondary meaning . . . . [since there] is no
> logical reason for the precise copying save an attempt to realize upon
> a secondary meaning that is in existence.

*Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1016 (9th Cir.
1985) (internal citation omitted); *see also Vision Sports, Inc. v. Melville Corp.*, 888
F.2d 609, 615 (9th Cir. 1989) ("Moreover, we have held that proof of copying
strongly supports an inference of secondary meaning."); *Fuddruckers, Inc. v. Doc's
B.R. Others, Inc.*, 826 F.2d 837, 844 (9th Cir. 1987).

In this case, the evidence of precise copying is overwhelming and the effect
of Forever 21's unlawful actions was to create garments that are clones of those of
Trovata's. Consequently, since Forever 21 is completely unable to rebut any
inference of copying, the Trovata Trade Dresses have acquired secondary meaning
as a matter of law. *Asics Corp. v. Skechers U.S.A.*, No. SACV 07-0103 AG
(PJWx), 2007 U.S. Dist. LEXIS 38048, at *23 (C.D. Cal. Apr. 25, 2007) ("[P]roof
of copying strongly supports an inference of secondary meaning.") (*quoting Vision
Sports, Inc.*, 888 F.2d at 615); *see also Lisa Frank, Inc. v. Impact Int'l, Inc.*, 799 F.
Supp. 980, 989-92 (D. Ariz. 1992) (holding that evidence brought forth of
defendants' intent to copy plaintiffs' novelty stationery products and packages
strongly supported a finding of secondary meaning); *Black & Decker Corp. v. Int'l
Sales & Mktg.*, 36 U.S.P.Q.2d 1851, 1853 (C.D. Cal. 1995) ("[Defendant's]
intentional copying of [plaintiff's] trade dress is, in and of itself, strong evidence of
secondary meaning.").

**2.     *There Is a Likelihood of Confusion Between the
         Infringing Products and the Trovata Trade Dresses***

**a.     The "*Sleekcraft* Factors"**

Likelihood of confusion results "whenever consumers are likely to assume

that a mark or trade dress is associated with another source or sponsor because of similarities between the two marks or trade dresses." *Rain Bird Corp. v. Hit Prods. Corp.*, 72 U.S.P.Q.2d 1105, 1109 (C.D. Cal. 2004) (*quoting Acad. of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991)). In the Ninth Circuit, courts look to eight factors to determine whether confusion is likely (the "*Sleekcraft* Factors"): (1) similarity of the marks; (2) proximity of the goods; (3) marketing channels used; (4) defendant's intent in selecting its mark; (5) strength of plaintiff's mark; (6) evidence of actual confusion; (7) type of goods and the degree of care likely to be exercised by the purchasers; and (8) likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). However, the eight-factor *Sleekcraft* test is "pliant," and some factors will weigh more heavily than others depending on the specifics of each case. *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).

The Ninth Circuit has held that the three most important factors in the *Sleekcraft* analysis are the proximity of the goods, the similarity of the marks, and the marketing channels used (*Sleekcraft* Factors #1, #2 and #3). *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000) ("Together with the relatedness of the services and the use of a common marketing channel, [the similarity of the marks] factor constitutes part of the controlling troika in the *Sleekcraft* analysis."); *see also Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 637 (9th Cir. 2007). Infringement generally will be found where the marks are "sufficiently similar that confusion can be expected." *Red Bull GmbH v. Matador Concepts, Inc.*, No. CV04-9006-JFW (PLAx), 2006 U.S. Dist. LEXIS 96764, at *21 (C.D. Cal. 2006) (*quoting Sleekcraft*, 599 F.2d at 348). Additionally, the defendant's intent in adopting the mark or trade dress is a component of the likelihood of confusion analysis, but it is an equitable consideration, as well.

*Sleekcraft*, 599 F.2d at 348 n.9; *Red Bull GmbH*, 2006 U.S. Dist. LEXIS 96764, at *21.

>  **b.**   **The Infringing Products Are Completely**
>           **Identical to the Trovata Trade Dresses**

In assessing similarity, trade dresses are to be compared in their entirety, and as they appear to consumers in the marketplace. *Red Bull GmbH*, 2006 U.S. Dist. LEXIS 96764, at *22. Moreover, "similarities are weighed more heavily than differences." *GoTo.com*, 202 F.3d at 1206.  It is axiomatic that the more pronounced the similarity is between two marks or trade dresses at issue the greater the likelihood of confusion. *K-Swiss Inc. v. USA Aisiqi Shoes Inc.*, 291 F. Supp. 2d 1116, 1123 (C.D. Cal. 2003) ("[W]here marks are virtually identical, 'if they were used with identical products or services likelihood of confusion would follow as a matter of course.'") (quotation omitted).  Consequently, since the Infringing Garments were copied directly from the Trovata Trade Dresses as well as the T Label Mark and the Trovata Label, they are identical.  Since Forever 21's wholesale copying renders the goods virtually indistinguishable, this critical *Sleekcraft* Factor weighs overwhelmingly in favor of a likelihood of confusion.

>  **c.**   **Trovata and Forever 21 Both Sell Apparel**

The risk of consumer confusion increases where goods are complementary or related. *K-Swiss*, 291 F. Supp. 2d at 1123-24; *see also Sleekcraft*, 599 F.2d at 350 ("For related goods, the danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists.").  Trovata and Forever 21 both sell fashion-forward apparel.  Consequently, the goods at issue are related, and this factor also weighs strongly in favor of Trovata.  Although Trovata apparel appears only in high-end specialty stores and online, whereas Forever 21 apparel is sold in Forever 21 retail outlets, where much lower prices prevail, this fact does nothing to abate the likely

1  confusion and harm to Trovata. The fact that Forever 21 has completely copied the
2  Trovata Trade Dresses, the T Label Mark and the Trovata Mark may lead
3  consumers erroneously to believe, to the detriment of Trovata and its retailers, that
4  Trovata has entered into a business and/or design arrangement with Forever 21.
5  *See K-Swiss*, 291 F. Supp. 2d at 1124 ("The similarity of the marks still may lead
6  consumers to believe that K-Swiss has created its own 'value' line of shoes sold in
7  discount shoe stores.").

8      Additionally, because both Trovata and Forever 21 sell apparel, "post-
9  purchase confusion" is potentially injurious to Trovata, inasmuch as individuals
10 other than the purchasers of the infringing Forever 21 garments see the lower-
11 quality Forever 21 products and believe that they originated from Trovata.[ix]

12      **d.    Forever 21 Intentionally Copied the Trovata Trade Dresses**

13     A finding that the defendant intended to adopt the trade dress of a party, and
14 thereby confuse consumers into believing that it is the owner of the trade dress, is
15 "entitled to great weight because a defendant is presumed able to accomplish this
16 purpose." *Fuddruckers, Inc.*, 826 F.2d at 845-46; *see also Sleekcraft*, 599 F.2d at
17 354. In this case, the overwhelming evidence of similarity between the Infringing
18 Garments and the Trovata Trade Dresses compels the conclusion that Forever 21
19 intended to trade off Trovata's reputation as an innovative trend-creating force in
20 the fashion world.

21     Forever 21 had infinite options of color, striping, stitching, scale and labels
22 available to it to design garments that reflected current fashion trends. Yet, despite
23 this, Forever 21 pirated the Trovata Garments to such an extent that it did not just
24 attempt to simulate the overall appearance and aesthetic appeal of the garments.

25

26 [ix] Under Ninth Circuit law, such post-purchase confusion is sufficient to establish likelihood of
   confusion under the Lanham Act. *K-Swiss*, 291 F. Supp. 2d at 1124-25; *Karl Storz Endoscopy-*
27 *America, Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 854 (9th Cir. 2002) (*citing Payless*
   *Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 989-90 (Fed. Cir. 1993)) ("'Post-sale'
28 confusion . . . may be no less injurious to the trademark owner's reputation than confusion on the
   part of the purchaser at the time of sale.").

Rather, by also replicating the Trovata Label and following many of the same stitching and button patterns, Forever 21 intended to wholly appropriate the entirety of the Trovata Garments along with Trovata's T Label Mark in order to confuse even the most discerning consumers.

As a result, Forever 21's bad faith in adopting the Trovata Trade Dresses weighs heavily in favor of a likelihood of confusion:

> [W]hen the evidence does show or require the inference that another's name was adopted deliberately with a view to obtain some advantage from the good will, good name, and good trade which another has built up, then the inference of likelihood of confusion is readily drawn, for the very act of the adopter has indicated that he expects confusion and resultant profit.

*Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 158 (9th Cir. 1963); *see also Lisa Frank, Inc.*, 799 F. Supp. at 996 ("The striking similarities found in the [defendant's] product line, packaging, colors and design cannot be explained away as mere coincidence.").

This conclusion is particularly inescapable given Trovata's reputation as an industry trendsetter and Forever 21's notoriety for reaping where it has not sown. (Whitledge Decl., ¶ 27, Ex. 15.) (Lyon Decl., ¶ 4.)

\*   \*   \*

Accordingly, the "most important" *Sleekcraft* Factors weigh very heavily in favor of a finding of likelihood of confusion, which mandates the entry of summary judgment.

### e.    **Other "*Sleekcraft* Factors"**

Analysis of the remaining *Sleekcraft* Factors only reinforces the conclusion that there is a high likelihood of confusion. First, given Trovata's acclaim and the strong secondary meaning of the Trovata Trade Dresses, the Trovata Trade Dresses

are plainly strong for the purposes of Lanham Act protection (Sleekcraft Factor #5). The law grants to strong marks the "widest ambit of protection from infringing uses." *Sleekcraft*, 599 F.2d at 349. The cumulative effect of Trovata's national recognition, its prestigious industry accolades, and its sales through high profile retailers for its designs and for the Trovata Trade Dresses is that its Trade Dresses have acquired strong recognition. (Whitledge Decl., ¶¶ 9, 10, 11, 12, 13, 14, 15, 16, 18, 19, 20, Exs. 3, 4, 5, 6, 7, 8, 9, 10, 11.)

Further, "a trademark holder's burden is to show likelihood of confusion, not actual confusion" (*Sleekcraft* Factor #6). *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 120 (1st Cir. 2006). Forever 21's Infringing Garments only appeared on the market in late 2006, soon after the Trovata Garments were first sold. Therefore, the time period during which the parties' products have coexisted is brief, and this factor should not be given any weight. *Borinquen Biscuit Corp.*, 443 F.3d at 121 (holding that failure of plaintiff to produce evidence of actual confusion should not be granted substantial weight where parties' products coexisted for not quite two and a half years).

In evaluating the sophistication of consumers (*Sleekcraft* Factor #7), the standard to be employed is "the typical buyer exercising ordinary caution." *Sleekcraft*, 599 F.2d at 353. Although Trovata's customers are likely to be fairly discriminating and sophisticated, it is precisely this type of consumer that is most likely to pay attention to and notice the degree of similarity between the Trovata trade dress elements and those same elements incorporated into the Forever 21 infringements.[x]

---

[x] *See Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 170 (2d Cir. 1991) (recognizing that sophisticated purchasers of plaintiff's high-end handbags may be more likely to pay attention to trade dress elements and assume a connection with plaintiff when they see similar elements in defendant's products,); *see also Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986) (holding that, although buyers of designer jeans are "sophisticated," these consumers pay the most attention to trade dress elements such as pocket stitching and are more likely to assume an association with the original designer when they see a similar design).

The likelihood of expansion of product lines (*Sleekcraft* Factor #8) is a relatively inconsequential factor in situations where, as here, two companies already compete to a significant degree. *See Brookfield Commc'ns,* 174 F.3d at 1060.

**f.     Summary of the "*Sleekcraft* Factors"**

Because the majority of the *Sleekcraft* factors weigh heavily in favor of Trovata, including the critical factor of the complete identity of the trade dresses at issue, Trovata has established a likelihood of confusion. *Cf. Nova Wines, Inc. v. Adler Fels Winery LLC,* 467 F. Supp. 2d 965, 983 (N.D. Cal. 2006) (holding that "[b]ecause all of the probative factors, including the all-important similarity factor, weigh in favor of plaintiff," plaintiff had established its ability to prove likelihood of confusion at trial sufficient for granting of preliminary injunction); *see also Phat Fashions, L.L.C. v. Phat Game Athletic Apparel, Inc.,* No. Civ. S-01-1771 LKK/PAN, 2002 U.S. Dist. LEXIS 15734, at *34 (E.D. Cal. March 19, 2002) (holding that the *Sleekcraft* factors weigh "heavily" in plaintiff's favor that a likelihood of confusion exists between the parties' competing trademarks and granting summary judgment in favor of plaintiff).  Accordingly, summary judgment should be granted in favor of Trovata on its claim of trade dress infringement pursuant to section 43(a) of the Lanham Act.

**C.     *Forever 21's Actions Constitute False Designation of Origin (Count 2)***

As set forth above, there is no issue of material fact with respect to likelihood of confusion under the *Sleekcraft* Factors.  Having established that Forever 21 is liable to Trovata for infringement of the Trovata Trade Dresses, Trovata has thereby established that Forever 21 has falsely designated the origin of its products under the Lanham Act. *See Am. Honda Motor Co., Inc. v. Pro-Line Protoform,* 325 F. Supp. 2d 1081, 1085 (C.D. Cal. 2004) (citation omitted) ("'[T]he ultimate test' for unfair competition is exactly the same as for trademark infringement: 'whether

1    the public is likely to be deceived or confused by the similarity of the marks.'").

2    **D.    *Forever 21's Actions Constitute False Advertising (Count 3)***

3    To establish a claim of false advertising under § 43(a)(1)(B) of the Lanham

4    Act, Trovata must show that: (1) Forever 21 made a false statement of fact in a

5    commercial advertisement about its own or another's product; (2) this statement

6    actually deceived or has the tendency to deceive a substantial segment of its

7    audience; (3) the deception is material, meaning that it is likely to influence

8    purchasing decisions; (4) Forever 21 caused its false statement to enter interstate

9    commerce; and (5) Trovata was injured or likely to be injured because of the false

10   statement, due to diversion of its sales to Forever 21 or due to a lessening of

11   goodwill. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th

12   Cir. 1997). A claim of false advertising is "not limited to literal falsehoods; it

13   extends to false representations made by implication or innuendo." *Cook, Perkiss*

14   *& Liehe, Inc. v. No. Cal. Collection Service Inc.*, 911 F.2d 242, 245 (9th Cir. 1990).

15   There is no issue of material fact that Forever 21 has falsely advertised the

16   Infringing Garments to the detriment and injury of Trovata. By painstakingly

17   copying the T Label Mark and the Trovata Label without Trovata's authorization or

18   permission along with the Trovata Trade Dresses, Forever 21 has intentionally

19   misrepresented to its customers that it is authorized to use the T Label Mark, the

20   Trovata Label and the Trovata Trade Dresses on the Infringing Garments and has

21   thereby misled consumers. *See Pepsico, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d

22   1172, 1176 (C.D. Cal. 2002).

23   **E.    *Summary Judgment in Favor of Trovata Is Appropriate on Its Claims***

24          ***Under Sections 17200, 17500 and 14330 (Counts 5, 6 and 7)***

25   The scope of California's unfair competition law is "'sweeping,' allowing a

26   court to enjoin 'wrongful business conduct in whatever context such activity might

27   occur.'" *Wein-Und Sektkellerei Jakob Gerhardt Niersteiner Schlosskellereien*

28

*GmbH & Co. v. Hopkins*, No. 07cv00673 BTM (WMc), 2007 U.S. Dist. LEXIS 75697, at \*4 (S.D. Cal. Oct. 11, 2007) (*quoting Barquis v. Merchants Collection Ass'n*, 7 Cal. 3d 94, 111 (1972)).   Under Cal. Bus. & Prof. Code § 17200, unfair competition includes "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200 (Deering 2008).   Accordingly, there are three types of unfair competition under the California statute: business acts or practices that are (1) unlawful; (2) unfair; and (3) fraudulent.   *Smith & Hawken, Ltd. v. Gardendance, Inc.*, No. C 04-1664 SBA, 2004 U.S. Dist. LEXIS 22934, at \*16 (N.D. Cal. Nov. 5, 2004).   "Unlawful" practices are those that are prohibited by law.   *Id.* (*citing Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994)).   "Fraudulent" practices are those that are "likely to deceive the public and do not refer to the tort of fraud."   *Smith & Hawken*, 2004 U.S. Dist. LEXIS 22934, at \*16-17.   A business practice is "unfair," for purposes of the statute, "where it is immoral, unscrupulous or substantially injurious to consumers, or where it offends an established public policy."   *Ernst Paul Lehmann Patentwerk v. San-Val Discount, Inc.*, No. CV 95-0771 DT (CTx), 1996 U.S. Dist. LEXIS 9899, at \*31 (C.D. Cal. May 22, 1996) (citation omitted).   The "unfair" prong of the statute generally "has been used to enjoin deceptive or sharp practices."   *Searle v. Wyndham Int'l, Inc.*, 102 Cal. App. 4th 1327, 1334 (2002).

It would be difficult to conceive of conduct more fraudulent or unfair than Forever 21's.   Not only did Forever 21 slavishly copy, not one, but seven different Trovata Garments, but it indefensibly and unjustifiably also took the symbol of Trovata's company, its T Label Mark.   Forever 21's conduct falls within what the Ninth Circuit has termed the "essence" of California statutory unfair competition, which:

[L]ies in the simulation and imitation of goods of a rival or competitor with the purpose of deceiving an unwary public into buying imitations

1  under the impression that it is purchasing goods of such competitor.

2  *Audio Fidelity, Inc. v. High Fidelity Recordings, Inc.*, 283 F.2d 551, 555 (9th Cir.

3  1960).

4     Consequently, Forever's 21's actions are precisely the type of odious

5  business practice that the statute was enacted to prohibit, and the likelihood of

6  confusion created by its conduct establishes a violation of Section 17200. *See*

7  *Cosmos Jewelry*, 470 F. Supp. 2d at 1087 (*citing Acad. of Motion Picture Arts &*

8  *Sciences*, 944 F.2d at 1457); *St. Ives Labs., Inc. v. Nature's Own Labs.*, 529 F.

9  Supp. 347, 349 (C.D. Cal. 1981) ("The current packaging and trade dress of

10  Defendant's jojoba shampoo and conditioner . . . is so close to Plaintiff's in detail

11  and overall impression that Defendant obviously copied the packaging and trade

12  dress of Plaintiff's jojoba products to take advantage of the extensive goodwill and

13  recognition of the packaging and trade dress of Plaintiff's jojoba shampoo and

14  conditioner."); *Digital Theater Sys. Inc. v. Mintek Digital Inc.*, 71 U.S.P.Q.2d 1448,

15  1454 (C.D. Cal. 2004) (*citing St. Ives Labs.*, 529 F. Supp. at 350) ("[W]here, as

16  here, the Defendant has deliberately chosen a packaging and trade dress nearly

17  identical to Plaintiff's, likelihood of confusion is presumed.").

18     Section 17200 is applicable regardless of whether federally registered

19  trademarks, unregistered trade dress, or both, are at issue. *See, e.g., Koon Chun*

20  *Hing Kee Soy & Sauce Factory, Ltd. v. Eastimpex*, No. C 04-4146 MMC, 2007

21  U.S. Dist. LEXIS 7880 (N.D. Cal. Feb. 2, 2007). Where, as here, defendants have

22  replicated not only the federally registered "T" mark and design, but also each and

23  every element of the Trovata Trade Dresses, so as to create garments virtually

24  indistinguishable from Trovata's products, defendants are liable under Section

25  17200 for unfair competition.

26     Moreover, given its sweeping reach Section 17200 encompasses causes of

27  action irrespective of whether there are any related federal claims, and provides a

28

- 21 -

basis to enjoin a wide range of fraudulent or unfair conduct.  For example, even though each individual feature of a product design may be available for public use, if a defendant replicates plaintiff's creation and this misleads the public, to the injury of the plaintiff, a claim for unfair competition arises.  *Haeger Potteries, Inc. v. Gilner Potteries*, 123 F. Supp. 261, 268 (S.D. Cal. 1954).  Moreover, where a defendant takes advantage of a plaintiff's outlay of time and expense, thereby cutting its own costs, the defendant has obtained an "unfair competitive advantage."  *Grove Press, Inc. v. Collectors Publ'n, Inc.*, 264 F. Supp. 603, 606-07 (C.D. Cal. 1967).[xi]

Forever 21 is also liable under Section 17500 of the California Business and Professions Code.  California statutory law also prohibits the dissemination of any statement, concerning the sale of personal property or the performance of services, that is "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500 (Deering 2008).  Use of a trademark or a trade dress that is likely to cause consumer confusion, as Forever 21 has done, constitutes a violation of California Business & Professional Code § 17500.  *Faberge, Inc. v. Saxony Prods., Inc.*, 605 F.2d 426, 428 (9th Cir. 1979).  Any violation of the false advertising law also violates the unfair competition law, § 17200.  *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1037 (C.D. Cal. 1998).

In order to establish a violation of Section 14330 of the California Business & Professions Code, Trovata must show "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark."  Cal. Bus. & Prof. Code § 14330 (Deering 2006).  A cause of action exists "notwithstanding the

---

[xi] In *Grove Press*, the Court enjoined the defendant's production and sale of an edition of a public domain work that "more than" copied plaintiff's edition, which was not protected by copyright. Among other things, the plaintiff had set and published the edition in its own type and defendant photographed and reproduced plaintiff's edition, thereby saving itself the substantial cost of typesetting. *Grove Press*, 264 F. Supp. at 605-07.

absence of competition between the parties or the absence of confusion as to the source of goods or services." *Id.*[xii] *See also Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988) (holding that defendant's CENTURY INVESTMENTS & REALTY mark could dilute plaintiff's distinctive CENTURY 21 mark).   Having established that Forever 21 willfully infringed the Trovata Trade Dresses, the T Label Mark and the Trovata Label, we respectfully submit that Forever 21 should be found in violation of Section 14330.

## IV.   CONCLUSION

Based on all the foregoing, there is no issue of material fact as to the high likelihood of confusion and high likelihood of injury to Trovata resulting from Forever 21's conduct.   Accordingly, Trovata respectfully requests that the Court grant Trovata's Motion for Summary Judgment as to all claims in its complaint.

---

[xii] On October 14, 2007, five days after Trovata filed its claim, Cal. Bus. & Prof. Code § 14330 was repealed and, in its place, § 14247 was enacted to conform to the Model State Trademark Law.  2007 Cal. Adv. Legis. Serv. 711 (Deering). Section 14247 states that:

> [A]n owner of a mark that is famous and distinctive, whether inherently or through acquired distinctiveness, shall be entitled to an injunction against another person's commercial use of a mark or trade name, if such use begins after the mark has become famous and is likely to cause dilution of the famous mark . . . .

Cal. Bus. & Prof. Code § 14247 (Deering 2007).  Trovata submits that § 14330 applies to the case at bar because its complaint was filed and the actions complained of therein occurred prior to the repeal of § 14330 and enactment of § 14247.

Dated:        May 12, 2008                        **COLUCCI & UMANS**

By:_____/s/_____
Frank J. Colucci
(Admission Pro Hac Vice Pending)
David M. Dahan
(Admitted Pro Hac Vice)
COLUCCI & UMANS
218 East 50th Street
New York, New York 10022
Telephone: 212.935.5700
Facsimile: 212.935.5728
Emails:fcolucci@colucci-umans.com
        ddahan@colucci-umans.com


Attorneys for Plaintiff Trovata, Inc.

Co-Counsel for Plaintiff Trovata, Inc.:

TUCKER ELLIS & WEST LLP
JEAN A. HOBART – STATE BAR NO. 146993
BART L. KESSEL – STATE BAR NO. 125080
ANNE SWOBODA CRUZ – STATE BAR NO. 229819
515 SOUTH FLOWER STREET, FORTY-SECOND FLOOR
LOS ANGELES, CALIFORNIA 90071-2223
Telephone:    213.430.3400
Facsimile:    213.430.3409

1

## CERTIFICATE OF SERVICE

2

## STATE OF CALIFORNIA – COUNTY OF LOS ANGELES

3

4     I declare that I am a citizen of the United States and a resident of Los
Angeles, California, or employed in the County of Los Angeles, State of California.

5     I, the undersigned, declare that: I am, and was at the time of service of the
documents herein referred to, over the age of 18 years, and not a party to the action;

6     and I am employed in the County of Los Angeles, State of California.  My business

7     address is 515 South Flower Street, 42nd Floor, Los Angeles, CA 90071.

8

9     On the date executed below, I served a true copy of the document(s)
described as:

10

11     **PLAINTIFF TROVATA, INC.'S NOTICE OF MOTION
AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

12

13     via Electronic Service by causing such document(s) to be served on the interested
parties to this action by submitting an electronic version of the documents via ECF

14     pursuant to the Court's Order.

15

16                     BRUCE BRUNDA, Esq.
                STETINA BRUNDA GARRED & BRUCKER

17                      75 Enterprise, Suite 250
                       Aliso Viejo, CA 92656

18

19     (√)    I declare that I am employed in the office of the Bar of this Court at whose
              direction the service was made.

20

21     Executed on May 12, 2008, at Los Angeles, California.

22

23     *ELIZABETH  MUNNERLYN*                        /s/
       _____                    _____
24       Printed Name                              Signature

25

26

27

28